<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| WOODBRIDGE CENTER REALTY PARTNERS, L.P. t/a WOODBRIDGE JEWELRY EXCHANGE,<br><br>Plaintiff,<br><br>v.<br><br>TOWNSHIP COUNCIL OF THE TOWNSHIP OF WOODBRIDGE et al.,<br><br>Defendants. | Civil Action No. 16-0386 (SRC)(CLW)<br><br>OPINION |

**CHESLER**, District Judge

      This matter comes before the Court upon two motions: (1) Defendant Township Council of the Township of Woodbridge ("the Township") and the Planning and Development Department of the Township of Woodbridge's ("Planning Board") motion to dismiss Count I of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) [Docket Entry 12]; and (2) Defendants 1 WBC, LLC, Hotels Unlimited, and Carey Tajfel's (collectively, "the Condo Defendants") motion to dismiss the remainder of the Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) [Docket Entry 14]. Defendant Planning Board of the Township of Woodbridge has joined both motions to dismiss (collectively with the Township and the Planning Board, "Township Defendants") [Docket Entries 16, 17]. Plaintiff Woodbridge Center Realty Partners, L.P. t/a Woodbridge Jewelry Exchange ("Plaintiff") has opposed both motions. The Court has considered the parties' submissions and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the

reasons set forth below, the Court will dismiss Plaintiff's takings claim (Count I of the Complaint) for failure to state a claim upon which relief may be granted. Having found that the only federal cause of action in this case must be dismissed, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims in the Complaint, pursuant to 28 U.S.C. § 1367(c). The Court will thus dismiss Count I of the Complaint, with prejudice, and all state law claims shall be dismissed without prejudice to their litigation in state court.

## I.  BACKGROUND

The Complaint alleges the following facts. Plaintiff and the Condo Defendants occupy the nine-story commercial building ("the Building") at One Woodbridge Center Drive, in Woodbridge, New Jersey. (Compl. ¶¶ 8, 25.) The Building was constructed in 1975, and Plaintiff has operated the Woodbridge Jewelry Exchange in the ground floor of the Building since 1989. (Compl. ¶¶ 19-21.) Plaintiff converted the Building to condominium ownership in 1996. (Compl. ¶ 27.) Plaintiff, a limited partnership, owns Unit Two of the Building—the ground floor, for commercial use. (Compl. ¶¶ 8, 28.) Defendant 1 WBC LLC, one of the Condo Defendants, owns Unit One of the Building, comprised of commercial offices on floors two through nine of the Building. (Compl. ¶¶ 28, 34.) The Master Deed for the Building contemplates the future construction of an additional building at this site (Unit Three), but no such construction has begun. (Compl. ¶¶ 30, 34.) Defendant 1 WBC LLC purchased Units One and Three in late 2014 or early 2015. (Compl. ¶ 34.)

Plaintiff learned in or around June 2015 that Defendant 1 WBC LLC had proposed to the Township the redevelopment of Unit One into 150 residential units, through the conversion of the commercial office space in Unit One to residential space. (Compl. ¶ 35.) Around this time, Plaintiff received a copy of the Township's Rehabilitation Plan for the Building, after Plaintiff

2

submitted an Open Public Records Request to the Township. (Compl. ¶ 37; Ex. B.) The Rehabilitation Plan calls for the conversion of Unit One into residential space, "exclusive of commercial uses on the first floor." (Compl. Ex. B.) The Township Council adopted an ordinance enacting the Rehabilitation Plan on December 15, 2015. (Compl. ¶¶ 49-56.)

Plaintiff filed the Complaint on January 22, 2016, alleging that the conversion of Unit One into residential space will require major reconstruction of the building, will violate the Master Deed for the building, and will impede or destroy the business of the jewelers who occupy the Woodbridge Jewelry Exchange [Docket Entry 1].

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

3

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

> Factual allegations must be well-pleaded to give rise to an entitlement to relief:
>
>> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." *New York v. Hill*, 528 U.S. 110, 118 (2000). Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend

within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### III. MOTIONS TO DISMISS

Plaintiff alleges in Count I of the Complaint that the actions of the Township Defendants, in implementing the Rehabilitation Plan through the approval of an ordinance on December 15, 2015, amount to a partial taking. A taking in violation of the Fifth Amendment occurs when property is taken for public use, without just compensation to the property owner. *Chainey v. Street*, 523 F.3d 200, 223 (3d Cir. 2008) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 n.13 (1985)). This prohibition applies to state and local governments through the Fourteenth Amendment. *Kelo v. City of New London, Conn.*, 545 U.S. 469, 472 n.1 (2005) (citing *Chi., B. & Q. R.R. Co. v. City of Chi.*, 166 U.S. 226, 239 (1897)). The Takings Clause "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English Evangelical Lutheran Church v. Cnty. of Los Angeles*, 482 U.S. 304, 315 (1987) (emphasis in original). A takings claim must be based on state action that affects a "legally cognizable property right." *Prometheus Radio Project v. FCC*, 373 F.3d 372, 428 (3d Cir. 2004) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) and *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160-61 (1980)).

Although "the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings." *First English*, 482 U.S. at 316. "The term 'inverse condemnation' is essentially a short-hand description of the manner in which a landowner recovers just compensation for a taking of his

5

property when condemnation proceedings have not been instituted." *Peduto v. City of N. Wildwood*, 878 F.2d 725, 728 n.4 (3d Cir. 1989) (quoting *United States v. Clarke*, 445 U.S. 253, 257 (1980)).  The Township Defendants have not instituted condemnation proceedings with respect to this Building (and the Rehabilitation Plan does not contemplate such proceedings), so any possible claim Plaintiff might bring with relation to the Rehabilitation Plan and ordinance could only be an inverse condemnation claim.

The Third Circuit has stated that "[t]he initial step in any taking analysis . . . is whether the challenged governmental action advances a legitimate public interest," and "[i]n this step, the governmental action is entitled to a presumption that it does advance the public interest." *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1030 (3d Cir. 1987) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)).  Under the police power, a township, such as the Township of Woodbridge, may regulate the use of property in its jurisdiction to promote the public good.  *Id.*

Fifth Amendment Takings Clause claims may be based on the state's direct appropriation of private property (a type of *per se* taking), or a regulatory taking.  *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370-71 (3d Cir. 2012).  Where a party asserts a regulatory taking, as Plaintiff does here, there is no set formula for analysis, and the court must engage in a factual inquiry to determine whether a taking has been effected.  *Id.* at 370-71 (citing *New Jersey v. United States*, 91 F.3d 463, 468 (3d Cir. 1996).  A *per se* or "categorical" regulatory taking occurs when the state's land regulation denies a property owner of "all economically beneficial or productive use of [the] land." *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992).  When a property owner retains some benefit in the land after governmental regulation, however, it may still be entitled to just compensation for a partial

regulatory taking.  *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001).  To determine if a partial regulatory taking has occurred, courts may consider several factors, including: (i) the economic impact of the regulation on the claimant; (ii) the extent to which the regulation has interfered with distinct investment-backed expectations; and (iii) the character of governmental action.  *Penn Central*, 438 U.S. at 124.  "[A] public program adjusting the benefits and burdens of economic life to promote the common good . . . ordinarily will not be compensable"; thus, that a regulation "adversely affect[s] economic values" is not sufficient to constitute a taking.  *New Jersey v. United States*, 91 F.3d at 468 (internal quotation marks and citations omitted).  "[E]ven a substantial reduction of the attractiveness of the property to potential purchasers" generally "does not entitle the owner to compensation under the Fifth Amendment."  *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 15 (1984).

     Plaintiff asserts that the Township Defendants' actions under the Rehabilitation Plan and ordinance have resulted in a partial regulatory taking.  Although the analysis of Plaintiff's claim requires this Court to undertake "essentially ad hoc, factual inquiries," the factors outlined by the Supreme Court in *Penn Central* will guide the Court's analysis.  *Penn Central*, 438 U.S. at 124.  The first factor the Court will consider is the economic impact of the actions on Plaintiff, or whether the actions have caused diminution of the value of Plaintiff's property.  *Id.*  Plaintiff alleges that the commercial value of its business, the Jewelry Exchange, has been greatly diminished through the Township Defendants' actions.  (Compl. ¶ 63.)  Plaintiff's assertions about the diminution of value of its property, or the potential end of the operation of the Jewelry Exchange, after the Township Defendants' regulation of Unit One do not raise a right to relief above the speculative level, given that the Township Defendants' actions do not change the already-existing limitations on Plaintiff's ability to do what it wishes with its property.  In fact,

7

the Rehabilitation Plan specifically excludes Unit Two from any zoning changes, and Unit Two remains a commercial zone that can continue to house the Jewelry Exchange.  Furthermore, Plaintiff does not contend that the Township Defendants' actions have deprived it of all economic value of its property, and the mere diminution of the value of land caused by a government regulation typically does not constitute a taking.  *First English*, 482 U.S. at 329; *see also Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926); *Rogin v. Bensalem Twp.*, 616 F.2d 680, 690 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981) ("unless application of the law destroys or severely diminishes the value of the property, the [Supreme] Court will uphold the application").  This factor does not support the Court in finding a taking on these factual allegations.

Second, the Court examines whether the Township Defendants' actions interfered with distinct investment-backed expectations Plaintiff may have had.  Plaintiff alleges that it has "made substantial financial investments in the acquisition, improvements, operation and maintenance of the Jewelry Exchange over the decades, and [it] reasonably expects the business to continue to operate profitably, indefinitely . . ." (Compl. ¶ 67.)  The Third Circuit has stated that "distinct, investment-based expectations are reasonable only if they take into account the power of the state to regulate in the public interest . . . [and] even where distinct, investment-based expectations are involved, a taking through an exercise of the police power occurs only when the regulation 'has nearly the same effect as the complete destruction of [the property] rights of the owner.'"  *Pace Res.*, 808 F.3d at 1033 (quoting *Keystone Bituminous Coal Assn. v. Duncan*, 771 F.2d 707, 716 (3d Cir. 1985)).  As noted above, pursuant to the police power, the Township Defendants "may regulate the uses of property within [their] jurisdiction to promote the public good," and courts have consistently found this type of regulation may affect the expectations of affected parties without resulting in a taking.  *Id.* at 1030, 1032-33 (citing *Penn*

8

*Central*, 438 U.S. at 125).  Furthermore, the Township Defendants' actions have not destroyed Plaintiff's property rights in Unit Two.  The Rehabilitation Plan specifically excludes the first floor of the Building, Unit Two, from any zoning changes.   The actions of the Township Defendants have not changed how Plaintiff may use its property in any way, including the continued operation of the Jewelry Exchange should Plaintiff desire it.  This factor also does not support the finding that a taking has occurred.

Finally, the Court examines the character of the government's actions.  This inquiry requires the Court to determine whether the action at issue "is a physical invasion of land and thus more likely to constitute a taking or a 'public program adjusting the benefits and burdens of economic life to promote the common good,' which ordinarily will not be compensable." *New Jersey v. United States*, 91 F.3d at 468 (quoting *Penn Central*, 438 U.S. at 124).  Again, Plaintiff does not allege that the Township Defendants have invaded its property in any way, nor do the Township Defendants' actions change the potential uses of Plaintiff's Unit Two property in any way.  *See Lucas*, 505 U.S. at 1015-16.  The Township Defendants' actions only affect the uses that may be made of Plaintiff's neighboring property, Unit One.  The Court also notes that the Township Defendants' Rehabilitation Plan for the Building is consistent with several public programs seeking to revitalize the Township of Woodbridge, including the 2009 Master Plan adopted by the Township of Woodbridge that proposes the conversion of the Woodbridge Center regional shopping mall to a modern mixed-use facility, among other provisions.  (Compl. ¶¶ 45-46.)  Furthermore, the June 2015 Township Resolution that referred the Rehabilitation Plan to Defendant Township Planning Board for further review discusses the 2010 designation of the Township of Woodbridge as a rehabilitation area under New Jersey law, and the study the

9

Township of Woodbridge undertook following the 2010 designation. (Compl. Ex. C, citing N.J.S.A. 40A:12A-5-6.) Again, this factor militates against finding a taking.

Based on the above analysis, the Court finds that Plaintiff has failed to state a takings claim upon which relief may be granted. In addition, the Court sees no prospect that Plaintiff can amend the Complaint to plead facts that will state a cognizable takings claim. As such, the Court will dismiss the takings claim, with prejudice, and without granting Plaintiff leave to file an Amended Complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile).

This result disposes of the only federal cause of action in this case, and thus eliminates the basis upon which this Court may exercise federal subject matter jurisdiction. The remainder of the claims in the Complaint are state law claims, over which this Court may exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a). Subsection (c) of this statutory provision authorizes courts to decline the exercise of supplemental jurisdiction once it dismisses "all claims over which it had original jurisdiction . . ." 28 U.S.C. § 1367(c). Supplemental, or pendent, jurisdiction "'is a doctrine of discretion, not of plaintiff's right,' and [] district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Here, the Court sees no circumstances that would justify the exercise of its jurisdiction over what is now a purely state law dispute. *See Gibbs*, 383 U.S. at 726-27 ("[I]f all the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well."). The Court will thus grant

the Condo Defendants' motion to dismiss the remaining claims in Plaintiff's Complaint, due to lack of subject matter jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant the Township Defendants' motion to dismiss Count I of the Complaint, with prejudice. The Court will also grant the Condo Defendants' motion to dismiss all remaining counts of the Complaint, without prejudice. An appropriate Order will be filed herewith.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: March 30, 2016